UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMI MCLAUGHLIN,<br><br>Plaintiff,<br><br>v.<br><br>TRICOLOR AUTO GROUP, LLC D/B/A<br>TRICOLOR AUTO;<br><br>Defendant. | § § § § § § § § § § § § | Civil Action No. _____<br><br><br><br>**COMPLAINT** |

**NOW COMES** Tami McLaughlin ("Plaintiff"), by and through the undersigned counsel, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Truth in Lending Act, 15 U.S.C. 1601 *et seq*. and the Texas Deceptive Trade Practices Act, Tex. Bus. and Com. Code § 17.46.

2. Plaintiff seeks relief and damages resulting from Defendant's misrepresentations concerning the history, condition, cost and quality of a vehicle it sold to Plaintiff.

3. Defendant's misrepresentations and inaccurate disclosures caused Plaintiff to enter into a purchase and loan transaction that she otherwise would not have entered but for Defendant's deception.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is conferred upon this Court by the Truth in Lending Act ("TILA") and 28 U.S.C. §§ 1331 as the action arises under the laws of the United States. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant resides and transacts business in this District, and a substantial part of the acts or omissions giving rise to this action occurred in this District.

## PARTIES

6. Plaintiff Tami McLaughlin ("Plaintiff") is a natural person residing in Baytown, Texas.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1602(i) and the Tex. Bus. and Com. Code § 17.45(4).

8. Defendant Tricolor Auto Group, LLC d/b/a Tricolor Auto ("Defendant") is foreign registered limited liability company doing business in the State of Texas with its principal office located at 1111 W. Mockingbird Lane, Suite 1500, Dallas, TX 75247.

9. Defendant is a "creditor" as defined by 15 U.S.C. § 1602(g) and a "person" as defined by the Tex. Bus. & Com. Code § 17.45(3).

10. All of the acts or failures to act alleged herein were duly performed by and are attributable to Defendant acting by and through its agents and employees. Said acts and failures to act were within the scope of said agency and/or employment, and Defendant ratified said acts and omissions.

## FACTUAL ALLEGATIONS

11. On or about September 23, 2017, in the wake of Hurricane Harvey, Plaintiff went to Defendant's used car lot on Beechnut Street in Houston, Texas to purchase a new vehicle after hers was totaled during the storm.

12. Plaintiff ultimately agreed to purchase what she believed was a 2014 Toyota 4Runner (the "Vehicle") from Defendant based upon its agent's representations concerning its age, history, cost and condition.

13. Plaintiff and Defendant's agent went to another location to pick up the Vehicle.

14. Upon arriving at the second location, Plaintiff complained of issues with the Vehicle and also noted it was filthy; Defendant promised to fix certain issues and to have the Vehicle "professionally" cleaned but never fulfilled those promises.

15. Since her credit union had not yet reopened, Plaintiff made a $2,000 down payment and financed the rest of the purchase through a direct loan with Defendant.

16. The Retail Installment Contract ("RIC") stated the APR was 12.06%, that she would pay $3,291.79 in finance charges, that the "Amount Financed" was $14,007.37, and that the "Total Sale Price," including her down payment, was $19,299.16.

17. The RIC also stated that Plaintiff would make 92 bi-weekly payments of $187.00 each and a final payment of $95.16 to pay off the loan.

18. The second page of the RIC stated that the "Cash Price" of the Vehicle was $14,799.00.

19. Unbeknownst to Plaintiff, the "cash" price of the Vehicle was approximately $8,500 greater than its retail value according to Kelley Blue Book, amounting to a hidden finance charge of $8,500 and an APR of 43.5%.

20. Defendant intentionally inflated the cash price of the Vehicle in order to hide, rather than accurately disclose, the APR and finance charges, and the true cost of purchasing the Vehicle on credit.

21. At the time of the transaction, Plaintiff told Defendant's agent her intent was to refinance with her credit union.

22. However, when Plaintiff went to refinance with her credit union, she learned that the Vehicle was a 2004 and not a 2014 as she had been led to believe, and that Defendant had taken advantage of her dire situation by selling her the Vehicle at an exorbitant price, more than double its true market value.

23. Plaintiff was unable to refinance the loan since the credit union was unwilling to make such an under-secured loan.

24. When Plaintiff attempted to return the Vehicle, Defendant told her it would not accept it and that returning it would result in a "repossession" reporting on her credit report.

25. Plaintiff's inability to refinance the loan forced her to remain stuck with unfavorable terms on an inflated loan.

26. Plaintiff has also since learned that the Vehicle was in a prior wreck and has a salvaged title and is likely worth even less than retail value according to Kelley Blue Book.

27. Because the Vehicle has a salvaged title, Plaintiff has been unable to participate in or take advantage of manufacturer recalls to repair known defects.

28. On September 24, 2018, Plaintiff through her counsel sent Defendant a letter pursuant to the Texas Deceptive Trade Practices Act, Section 17.46 of the Business and Commerce Code ("DTPA").

29. On October 16, 2018, Defendant through its in-house counsel responded that the salvage title was an error that had "since been corrected" and that "[a]ll prices, fees and APR's are in accordance with Texas law. We did not increase our prices due to Hurricane Harvey. We do not participate in predatory lending practices. We are, however, a buy-here, pay-here dealer, and our prices and financing terms reflect such."

30. At the time Plaintiff purchased the Vehicle, she was not aware that Defendant considered itself a "buy-here, pay-here dealer" or that its "prices and financing" terms were based on its status, nor had Plaintiff ever before heard the term "buy-here, pay-here dealer."

31. As a result of Defendant's representation that the salvage title was "in error" and had been fixed, Plaintiff attempted to return to her local Toyota dealership to get it serviced in accordance with a recall but was again denied service because the title has not been fixed or corrected.

32. On December 11, 2018, Plaintiff initiated arbitration with the American Arbitration Association ("AAA") pursuant to the Arbitration Agreement executed by the parties.

33. However, on January 24, 2019, the AAA declined to administer the case because Defendant failed to pay the required fees.

34. As a result of Defendant's actions, Plaintiff is left with an unsafe vehicle with a salvaged title that is worth less than half of what Defendant sold it at, and locked into an inflated loan with unfavorable terms, forced to continue making payments on the loan in order to preserve her credit.

35. Defendant's actions have caused Plaintiff actual damages, including but emotional distress and frustration, and to incur out-of-pocket costs.

36. By reason of the above, Plaintiff is entitled to recover damages from Defendant in an amount within the jurisdictional limits of this Court, as well as pre and post-judgment interest.

## TRIAL BY JURY

37. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. Amend. 7. Fed. R. Civ. P. 38.

## CAUSE OF ACTION

## COUNT I.

## VIOLATIONS OF THE TRUTH IN LENDING ACT – 15 U.S.C. § 1601 et. seq.

38. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

39. One of the primary purposes of the TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

40. The TILA is a remedial act intended to "penalize noncomplying creditors and deter future violations" and to protect consumers and, as such, its provisions are to be liberally construed in favor of consumers.

41. The September 23, 2017 transaction was a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 1026.2, because Defendant regularly extends consumer credit payable by written agreement in more than four installments, as defined in 15 U.S.C. § 1602(g)(1); Reg. Z § 1026.2(a)(17)(i), and Plaintiff intended to use the Vehicle for personal, family, or household purposes.

42. Defendant, in the RIC, failed to disclose the 43.5% APR and failed to accurately disclose the $8,279 Finance Charge (rather than $3,291.79), both in violation of TILA and Regulation Z.

43. Defendant's actions and misrepresentations were intentional.

44. As a result of these violations, Defendant is liable for actual and statutory damages, plus attorney's fees and costs, in accordance with 15 U.S.C. § 1640(a).

## COUNT II

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – Tex. Bus. & Com. Code § 17.46

45. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

46. Defendant's above-described actions and dealings with Plaintiff violated the Tex. Bus. & Com. Code § 17.46 ("DTPA"):

- Defendant misrepresented that the Vehicle was of a particular standard, quality, and model;

- Defendant failed to disclose the Vehicle was a 2004, rather than a 2014, that it had been in a prior wreck and/or had a salvage title, and that Plaintiff would be unable to refinance with another lender, all which was known at the time of the transaction, in order to induce Plaintiff the transaction into which she would not have entered had the information been disclosed;

- Defendant failed to disclose it was a "buy-here, pay-here" lender and that the sales price of the Vehicle was higher than what a cash or other consumer would pay for the same vehicle;

- Defendant took advantage of a disaster declared by the Governor by selling the Vehicle, a necessity, to Plaintiff at an exorbitant price.

47. Defendant's actions in making misrepresentations to a consumer, in the wake of a natural disaster, to induce her into a transaction she would not have otherwise entered into were unconscionable.

48. Defendant's actions and misrepresentations were intentional and were a producing cause of Plaintiff's economic damages and mental anguish.

49. Defendant is liable to Plaintiffs for economic damages, mental anguish, actual damages, attorney's fees, interest, out-of-pocket costs and expenses.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

- awarding Plaintiff appropriate actual, statutory and punitive damages for violating the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*;
- awarding Plaintiff costs and reasonable attorney's fees and post judgment interest pursuant 15 U.S.C. § 1640;
- awarding Plaintiff appropriate damages for violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46;
- awarding Plaintiff costs and reasonable attorney's fees and post-judgment interest pursuant to Tex. Bus. & Com. Code § 17.50;
- an order pursuant to Tex. Bus. & Com. Code § 17.50 enjoining the Defendant from further violations of the Deceptive Trade Practices Act;
- any other appropriate declaratory and/or injunctive relief; and
- such other and further relief as the court deems just and equitable.

Dated this 30th day of January, 2019.

Respectfully Submitted,

**LAW OFFICE OF TRISTA JOHNSON**

*/s/ Trista M. Johnson*
Trista M. Johnson
Texas State Bar No. 24101089
1712 N. Frazier Street, Suite 212C
Conroe, TX 77301
Telephone: 936.570.0575
Email: trista@txconsumerlawyer.com

**ATTORNEY FOR PLAINTIFF**